## In the matter of NEWELL SMITH.

The law providing for the expulsion of *physicians* from medical societies, and the abrogation of their licences in cases of gross ignorance or misconduct in their profession, or when guilty of immoral conduct or habits, is a valid and constitutional law.

The constitutional provision that no one shall be held to *answer* except on *presentment* or *indictment,* means that no one shall be held to answer *criminaliter* with a view to punishment under the criminal law, and has no reference to *disciplinary* proceedings, or which have exclusive regard to some special character or relation of the accused.

The provision in the constitution of the United States relative to *trial by jury* applies only to the federal courts, and the provision in the constitution of this state securing the right of such trial *as heretofore used,* applies only to cases of trials of issues of fact in civil and criminal proceedings in *courts of justice.*

The provision forbidding the creation of *courts* proceeding differently from the course of the common law, refers to *courts exercising the usual jurisdiction of courts of law,* but proceeding by *modes* unknown to the common law.

Where rights are conferred by an act of the legislature, subject to determination in a certain manner, and the power to alter, modify or repeal is reserved, the legislature may prescribe a new and different mode in which the rights may be put an end to ; and under such modification of the law, a forfeiture of rights may be declared, although the acts, the cause of the forfeiture, happened previous to such modification.

A *medical society* is not precluded from preferring charges against a physician, by the fact of the same charges having been once before passed upon by them, and not sustained.

The trial and acquittal of a physician in a court of criminal jurisdiction, upon the same charges exhibited against him by a medical society, are no bar to an inquiry under the statute for the purpose of depriving him of his right to practice physic and surgery.

CERTIORARI to the judges of the Oneida common pleas. The judges of the Oneida common pleas having, in pursuance of the provisions of the revised statutes, 1 *R. S.* 452, § 3, &c. *expelled* Newell Smith, a practising physician and surgeon of the county of Oneida, from the County Medical Society, and *declared* him forever thereafter *incapable of practising physic and surgery* within this state, a *certiorari* was sued out to bring up the proceedings to this court. From the return made by the judges, it appeared that at the *annual meeting* of the medical society of the county of Oneida, held on

NEW-YORK,
May, 1833.

In the matter
of Smith.

the 6th day of *July,* 1830, a charge of gross misconduct in his profession was exhibited against Smith, as a member of the society and a practising physician, for that he, on the 10th day of June, 1828, at, &c. wantonly and without cause or necessity, or the supposition that the same was necessary, by violent means, caused and procured one M. M., the wife of A. P. M., to miscarry of a child, and thereby, then and there caused and procured an *abortion* of the said child, with which she was then pregnant ; and also a charge of *immoral conduct and habits* was exhibited against him, for that he, on, &c. and for the period of a year then next following, carried on a criminal and adulterous sexual intercourse with M. M., the wife of A. P. M., at &c.   On the 27th *July,* at, &c. a *special meeting* of the society convened in pursuance of due notice, to consider the charges : there being present at such meeting the *president* of the society, the *secretary* and 29 *members,* and the same having been considered, it was *resolved* (two thirds of the members present concurring) that the charges were well founded.   On the 30th *July* a copy of the charges and of the vote of the society thereon was delivered to *Smith,* and another copy to the district attorney of the county, who, on the 2d *August,* gave notice to *Smith* that the judges of the court of common pleas of Oneida county would meet on, &c. at, &c. for the purpose of hearing and determining the charges made against him.   At the time and place appointed, *five judges* of the common pleas attended, the district attorney appeared to conduct the prosecution of the charges, and *Smith* appeared with counsel to defend ; Smith objected to any further proceedings, on the ground that the act of the legislature under which the proceedings were had was *unconstitutional* and *void,* alleging it to be in violation of the constitution of the United States, the constitution of this state, and of the bill of rights.   He further objected, that previous to the proceedings being had before the medical society which were now presented to the judges, to wit, on the 5th *March,* 1830, the same charges against him and specifications had been presented to the medical society of Oneida ; that a special meeting of the society had thereupon been called and assembled, and that two thirds of the members present at such meeting had *not* concurred in pronouncing

the charges well founded. He also objected that he had been *indicted* in relation to the charge of *abortion*, and had been tried at the oyer and terminer and acquitted; in reference to this last objection it was conceded by the parties that the child referred to in the charges and in the indictment was not a *quick child*, and that Smith was acquitted at the oyer and terminer on the ground that the offence charged against him was not, at the time of the commission thereof, punishable by law. All which objections were overruled by the judges, who proceeded to hear the proofs adduced before them, and having duly considered the same, *three* out of the number of *five* judges who attended the hearing, were satisfied that the charges were true, and made an order expelling Smith from the medical society of the county, and declaring him forever thereafter incapable of practising physic and surgery within this state.

*J. A. Spencer*, for the plaintiff in error. The act under which these proceedings have been had is unconstitutional and therefore void. By it a tribunal is created proceeding in a course unknown to the common law, having power conferred upon it to take cognizance of the *immoral conduct* or habits of a portion of the community belonging to a particular profession, and to impose punishments of the severest character. There is not a crime or an offence known to the laws of which this tribunal may not inquire; and the party charged is bound to answer, not on the *presentment* or *indictment* of a grand jury, but upon the opinion of two thirds of a special meeting of a medical society, acting without the solemnity of an oath, or being guided by the testimony of witnesses. This, it is insisted, is a palpable violation of that provision of the constitution which declares that no person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment of a grand jury. Besides, instead of having a trial by a *jury*, who must acquit unless all concur in a verdict of condemnation, the accused is tried by a commission of five judges, a *majority* of whom are authorized to condemn. Here again it is submitted that the constitution has been violated, which provides that the trial of all crimes shall be by jury, *Constitution of the United*

*States*, and that the trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever, and no new court shall be instituted but such as shall proceed according to the course of the common law, *Constitution of New-York* By the *bill of rights* also it is declared, that no member of this state can be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers. The right of the legislature to regulate the practice of physic and surgery is conceded, but it is denied that they have the power to declare the immoral conduct or habits of the members of any particular profession a public offence, and to subject the offenders to a trial in a tribunal unknown to the common law. The right to pursue the profession of a physician belongs to every citizen, subject only to such requirements as to learning, skill and science, as the legislature may think proper to prescribe as a pre-requisite to his admission, or as a condition of his continuance in the profession ; and he cannot be disfranchised or deprived of this right, but by the law of the land or the judgment of his peers, and yet the plaintiff in error has been disfranchised by a court not proceeding according to the course of the common law, created not for the purpose of passing upon the fitness of individuals to remain members of a profession in reference to qualifications, but to inquire into violations of moral conduct. The counsel here read the remarks of *Blackstone* upon the erection of new tribunals for the decision of facts, without the intervention of a jury, and his caution to guard with jealous circumspection against the introduction of new and arbitrary methods of trial, 3 *Black. Comm.* 380, and also referred to 3 *Hamilton's works*, 259, *No.* 83, and 3 *Dallas*, 388. The counsel next insisted that even if the law was not unconstitutional in the points of view in which he had presented it, the plaintiff in error was not amenable to it, for the offence charged if committed took place previous to the existence of the law creating the punishment : the law therefore, as to the offence in question, was *ex post facto*. He also insisted that the charges presented against his client, having once been rejected by the medical society, such rejection ought to have been considered as a bar to the prosecution; that the society having passed upon the charges, it was *functus officio*, and had

not the power subsequently to review them ; contending that as the society was not like a grand jury, composed of different and distinct individuals, but consisting of the same body of men, sound policy required that a complaint once made and rejected, should not be revived ; and finally, that the indictment and trial of the plaintiff in error in a criminal court, for the same offence, was a conclusive bar to the prosecution; and if the acquittal of the party was for the reason, as had been contended, that the offence was not punishable by the existing laws, a more conclusive argument could not be presented to shew that the order of the judges complained of should be reversed.

*H. Denio,* (district attorney of Oneida) contra. The statute under which the proceedings were had in this case does not conflict with the provision that ' no member of the state shall be disfranchised or deprived of any of his rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers,' because the sole object of that provision is to guard the citizen against acts *done without law,* and is a paraphrase of the provision in *magna carta* guarding against arbitrary acts and illegal exactions, under what was called the king's *prerogative.* *Statutes at large, p.* 13, *magna carta, ch.* 29. 2 *Dwarris on Stat.* 809. But supposing this provision to read, 'that no citizen shall be deprived of his rights or privileges except by the judgment of his peers,' or in other words ' by a trial by jury,' the party accused here cannot complain of any act of the legislature affecting his privileges, as he has no *privileges as a physician* but such as are granted by the legislature, and accepted by him subject to such modifications as may from time to time be made. As long since as 1796, it was declared unlawful for any person *not regularly licenced* to practice physic and surgery ; county medical societies were established, who were authorized to make by-laws relative to the admission and *expulsion* of members, and the legislature reserved the right to alter, modify, or repeal the act on the subject, whenever they should deem it necessary or expedient. In 1797, a penalty for practising without a licence was superadded,

and these acts were all re-enacted in 1813, 2 *R. L.* 219, §
12, 14, 23. It was not pretended that Smith had a licence to
practice as a physician previous to 1806; consequently all the
rights he had as a physician were subject to legislative modifi-
cation, and surely it cannot be pretended but that by the pro-
visions of the *revised statutes,* he is much more effectually
secured in the enjoyement of his rights than under the previ-
ous laws.

Nor is the act of the legislature in conflict with the consti-
tutional provision, that ' no person shall be held to *answer* for a
capital or other infamous crime, unless on presentment or in-
dictment of a grand jury.' The primary object of this provis-
ion was to abolish *ex officio informations,* but it is not denied that
it establishes, as a fundamental rule in the execution of the
criminal laws, in respect to the offences to which it applies, that
an accusation must be made by a grand jury; but it has no
application to this case; the party accused here was not held
*to answer,* within the meaning of this provision, nor was he
charged with a *crime,* in the legal sense of the term.   1 *Chit-
ty's Cr. Law,* 599.   20 *Johns. R.* 460.

Nor does the statute violate any of the constitutional provis-
ions securing the *trial by jury.*   The provision in the consti-
tution of the United States, that ' the trial of all crimes ex-
cept, &c. shall be by jury,' applies only to the *federal courts,*
and is not restrictive of the state tribunals; 2 *Cowen,* 815,
818, *n.;* 3 *Cowen,* 701 ; 8 *Wendell,* 85 ; 3 *Paige* 45 ; and the pro-
vision in the state constitution guarantees a trial by jury only
in cases in which it has been *before used :* that is, in the prose-
cution of offences in the course of criminal justice, and in the
decision of issues of fact in civil cases.   It does not extend to
inquiries for collateral purposes, as in proceedings against *at-
tornies* or officers of courts for contempts, or against the mem-
ber of a medical society, where the object is not the punish-
ment of the offender, but to purge of an unworthy member a
*profession in which purity of conduct and character are all im-*
portant.   A proceeding against an attorney for contempt is
no violation of the constitutional right of trial by jury, and a
punishment inflicted in consequence of such proceeding, is no
bar to a criminal prosecution.   Again, when the offence

charged was committed, to procure the abortion of a child not *quick*, was not indictable. *3 Chitty's Cr. Law*, 797 *to* 800. 1 *Hawk.* 121, § 16. 9 *Mass. R.* 387.

The statute in question is consistent also with the constitutional provision, forbidding the creation of *new courts* proceeding differently from the course of the common law. This provision refers to tribunals exercising *the usual jurisdiction* of courts of law, but proceeding by modes unknown to the common law ; it does not forbid the creation of boards of commissioners, or other tribunals for conducting inquiries for purposes other than the administration of civil and criminal justice. It is substantially a transcript of a statute passed in the reign of Charles I. to destroy the courts of *star-chamber* and *high commission*, 4 *Statutes at large*, 816, § 5 ; *Dwarris on St. part 2, p.* 294 ; which courts, in almost all their forms of proceeding, departed from the usages of the common law, and assimilated them to the civil law ; a *forum* like that before which these proceedings were had is not a *court.* As to the *bill of rights*, what is in it beyond the constitution is but statute law, of no more force than any other statute, and consequently may be repealed. Upon the whole, an act of the legislature, deliberately enacted in all the forms of the constitution, should not be *declared void*, unless it is void beyond all doubt. 4 *Wheaton*, 625. 3 *Dallas*, 399.

It was not illegal that the medical society should consider the subject of the charges, after having once acted in the matter without pronouncing them well founded. This accusatory power is like that of a grand jury, and it is undeniable that a complaint may be and frequently is preferred to successive grand juries, 4 *Black. Comm.* 305 ; 1 *Chitty's C. L.* 325 ; and the fact that the medical society acts upon extrajudicial information, is an additional reason why they should not be precluded from a second inquiry.

The *judges* could not inquire into the proceedings of the medical society, the powers of the society being co-ordinate with those of the judges, and not subordinate, and the authority of the judges being limited and special. If any error occurred in the proceedings of the society, it could be corrected only by *certiorari* addressed to that body ; the judges could

NEW-YORK, not return as to what was done by the society, the society
May, 1833. being entitled to answer for itself.

In the matter          The *certiorari* in this case brings up only the record, and not
of Smith.     the evidence or the decisions in its admission or rejection ; the
judges could be required to return only enough to shew that
they had jurisdiction, and every thing returned by them not
called for by the process, will be disregarded. 6 *Cowen*, 556.
2 *Caines*, 179. 2 *Wendell*, 564. 5 *id.* 98.

The *acquittal* of the accused in the oyer and terminer was
no bar ; he was acquitted because the offences charged were
not indictable. The failure to have proved the charges before
the judges would have been no bar to a criminal prosecution,
nor would the conviction of the accused before them have
been evidence in a criminal court ; the object of the two in-
quiries are totally distinct and different. 1 *Phil. Ev.* 247. 14
*Johns. R.* 79.

*By the Court*, SUTHERLAND, J. I see no constitutional ob-
jections to the law, 1 *R. S.* 452, under which the proceedings
in this case were had ; it undertakes to regulate, by some
general provisions, the practice of physic and surgery in this
state ; and with a view to the moral character, as well as the
learning and skill of the members of this most useful and
responsible profession, it gives to the county medical societies
the right to try any of their members against whom specific
charges of gross ignorance or misconduct in his profession,
or of immoral conduct or habits, may be brought.

It is contended, in the first place, that this law violates that
provision of the bill of rights and of the constitution of this
state which declares that no person shall be *held to answer* for
a capital or otherwise infamous crime, (except, &c.) unless
on presentment or indictment of a grand jury, 1 *R. S.* 53, §
7 ; *id.* 93, § 72 ; 2. That it conflicts with those provisions of
the constitution of the United States and of this state which
secure to the citizens the right of trial by jury, and prohibit
the establishment of any new court, except such as shall pro-
ceed according to the course of the common law ; and it is
also contended that the law could not be properly applied to
the offence charged in this case, inasmuch as it is alleged to
have been committed in June, 1828, whereas the law did not

go into operation until January, 1830. In the opinion of the court, the answers given by the district attorney to these various objections are entirely satisfactory.

When the constitution speaks of a person not being *held to answer* for a capital or otherwise infamous crime, unless on presentment or indictment, &c. it means to answer in a course of criminal proceedings—to answer *criminaliter*, with a view to punishment under the criminal law, and has no reference whatever to those collateral or incidental proceedings which are disciplinary in their character, or have exclusive regard to some special character or relation which belongs to the individual.

The provision in the constitution of the United States, in relation to the trial by jury, applies only to the federal courts; and our state constitution secures the right in all cases in which it has heretofore been used. Now it never was in use, before or since the adoption of the constitution, in cases like this. It applies only to cases of trials of issues of fact in civil and criminal proceedings in courts of justice. 8 *Cowen*, 815, *note* 6. 3 *id.* 701. 8 *Wendell*, 85. 3 *Paige*, 45. The proceedings under this statute are not a trial as for an offence with a view to punishment, but a mere summary inquiry to ascertain facts for a collateral purpose.

Nor is this a *court* proceeding differently from the course of the common law. The provision of our constitution, which forbids the creation of such courts, refers, as was correctly urged in argument, to courts exercising the usual jurisdiction of courts of law, but proceeding by *modes* unknown to the common law ; but it does not prohibit, and never has been considered as prohibiting the organization of various tribunals, as commissioners, &c. for other purposes than the administration of civil or criminal justice.

The power conferred by this statute is similar in its character and consequences to that which is possessed by the courts of record of this state over counsellors, solicitors and attorneys. They may by statute, 1 *R. S.* 108, § 23, 24, be removed or suspended by the several courts to which they belong. The 24th section prescribes the mode of proceeding in such cases.

They are strictly summary. A copy of the charges is to be delivered to the party, and he is to have an opportunity of being heard. But there is no grand jury to indict, or petit jury to try, nor any of the usual concomitants of a trial by jury; and yet I believe no constitutional objections were ever raised to this jurisdiction.

The practice of physic and surgery in this state was regulated by law as early as 1760, 2 *R. L.* 219, *note*, and such regulations have been altered and extended from time to time, down to the passing of the act in question. Under the law, as it previously existed, the county medical society were authorized to make such by-laws and regulations relative to the *admission* and *expulsion* of members as they thought fit and proper, not inconsistent with the constitution and laws of the state. 2 *R. L.* 222, § 14. The present act only regulates the exercise of a power which previously existed; it does not, that I perceive, in any respect increase the power which those societies before had a right to exercise over their members; it prescribes a more formal mode of investigating any imputations against its members, before the right to suspend or expel them shall be exercised; it essentially increases, instead of diminishing their security. This observation is also a sufficient answer to the objection that the law is retrospective in its operation; it merely changes the form of proceeding. But the legislature, by the act of 1813, 2 *R. L.* 224, § 23, reserved the right to alter, modify or repeal its provisions at pleasure.

Without stopping to inquire whether any error, which may have been committed by the medical society in the preliminary proceedings in this case, can be reached by this *certiorari*, or whether the judges had a right to inquire into the regularity of those proceedings, or how much of the proceedings before the judges themselves is regularly brought up, and is now before us, I shall content myself with saying that I see no error or irregularity in any part of the proceedings, either of the medical society or the judges.

The medical society were not ousted of their jurisdiction in the matter, by having once refused to prefer these charges. In that proceeding they are but accusers, like a grand jury,

and may receive additional testimony or re-consider the case, and change their determination upon the original evidence.

The trial and acquittal of the defendant upon the indictment for producing the abortion was no bar to this proceeding ; they are entirely distinct and independent proceedings, having different objects and results in view ; the one having regard to the general welfare and criminal justice of the state ; the other simply and exclusively to the respectability and character of the medical profession, and the consequences connected with or necessarily flowing from it.   It is immaterial therefore, in my judgment, whether the offence mentioned in the charge was indictable or not, and whether the indictment was disposed of upon its merits, or upon some matter of form.

Proceedings of Judges affirmed.

NEW-YORK, May, 1833.

In the matter of Smith.

END OF MAY TERM.